490 S.E.2d 748

**STATE of West Virginia, Appellee,**

v.

**David E. TAYLOR, Appellant.**

No. 23668.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 4, 1997.

Decided July 14, 1997.

Robert C. Stone, Jr., Martinsburg, for Appellant.

Vito Mussomeli, Assistant Prosecuting, Martinsburg, for Appellee.

PER CURIAM:

This is an appeal by David E. Taylor from an order from the Circuit Court of Berkeley County sentencing him to ten years in the State Penitentiary for aggravated robbery. During the defendant's trial, he was positively identified as the individual who robbed the Apple Valley Supermarket in Inwood, West Virginia, on February 6, 1989. On appeal, he claims that various errors were committed by the trial court relating to state's witnesses identifying him as the perpetrator of the crime. He also claims that the trial court erred in allowing the state to elicit improper testimony relating to collateral crimes committed by him, that the circuit court erred in denying his motion for public funds to secure the services of an expert in eyewitness identification, and that the circuit court erred in failing to ask all voir dire questions which he requested. Lastly, he claims that the circuit court erred in failing to grant him a directed verdict at the close of the state's evidence. After reviewing the issues raised and the documents filed, this Court disagrees with the appellant's assertions. The judgment of the Circuit Court of Berkeley County is, therefore, affirmed.

On February 6, 1989, a lone, undisguised person robbed the Apple Valley Supermarket in Inwood, West Virginia. The investigation of the crime by the West Virginia State Police culminated in the defendant's arrest.

The defendant was tried on April 20, 1993. At the trial were Kimberly Dowd DeHaven, Melissa Miller, Robert Cuthbert and John Mason, who were working in the Apple Valley Supermarket at the time of the robbery, and who positively identified the defendant as the perpetrator of the crime. During the investigation of the case these individuals had been shown photo arrays which included photos of the defendant. The photos in one of those arrays were lost prior to trial. Also, two of the witnesses had seen the defendant as he was being taken to magistrate court prior to trial. Because of these circumstances the defendant claimed that the in-court identification of him as the perpetrator of the crime was tainted and the trial court erred in allowing it.

The State also called as a witness Trooper David Lucas, who testified that during a conversation with the defendant, the defendant had suggested that he had committed other crimes. Specifically, after testifying that the defendant made a remark to the effect that he felt sorry for the individual who ratted on him on the Apple Valley thing, Trooper Lucas was asked: "Did he make any other comments to you?" Trooper Lucas responded, "He—yes, he said after—drugs and alcohol now's out of his system. That is why he committed crimes."

At the conclusion of the State's case the defendant moved for a directed verdict, and the trial court denied that motion, and, as previously indicated, at the conclusion of the trial, the jury found the defendant guilty of the aggravated robbery of the Apple Valley Supermarket.

On appeal, the defendant makes a number of assignments of error relating to the identification of him as the perpetrator of the crime.

During the trial, a number of witnesses positively identified the defendant as the individual who robbed the Apple Valley Supermarket. Although these witnesses were somewhat shocked by the robbery, all were firm in their conviction that the defendant was the perpetrator of the crime. Additionally, their testimony indicated that they were within a few feet of the defendant for one or more minutes during the commission of the crime and that they had an ample opportunity to observe and fix in their minds his features. All the witnesses gave very similar descriptions of the defendant, with the exception of one did not remember the defendant had a mustache.

Sometime prior to trial, the witnesses who were present during the robbery were shown three separate photo arrays. By the time of trial, photo array number two, as well as the key to it, had been lost by the police officers conducting the investigation. The photos and keys to arrays number one and number three were preserved. Four of the witnesses viewed the intact array number one, John Mason, Kimberly Dowd DeHaven, Robert Cuthbert and Tony Link. Three of these witnesses properly concluded that the defendant was not included in the array. Only witness Cuthbert picked any individual in array number one as a possible perpetrator of that crime, and he clearly felt that the photo he picked was a "possible" only. Melissa Miller and Kimberly Dowd DeHaven viewed photo array number two, the lost array. Neither could identify the defendant from that array. Kimberly Dowd DeHaven, Melissa Miller, and Robert Cuthbert viewed array number three. All three properly identified the defendant in that array.

A further factor complicating the identification issue occurred on May 15, 1989, when two of the state's witnesses, Kimberly Dowd DeHaven and Robert Cuthbert, observed the defendant dressed in orange prison garb, handcuffed and shackled while he was led into magistrate court for preliminary hearing.

Three of the defendant's assignments of error in this case relate to the identification of him as the perpetrator of the crime charged. First, he claims that the failure of the State to produce the photos and "key" photo array number two was prejudicial to his case. Second, he claims that his right to counsel in a line-up-type situation was violated when he was observed by witnesses DeHaven and Cuthbert, being led into magistrate court in orange prison garb. Lastly, he claims that the photographic identification procedure created a likelihood of misidentifi-

cation and that the facts of the case did not support a finding that there was a sufficiently reliable independent basis for the in-court identification of him to permit its admission during trial.

This Court has recognized that even where an eyewitness to a crime improperly views a defendant or a photo array of a defendant after the commission of a crime, but before trial, the viewing does not automatically require suppression of an in-court identification of the defendant by the eyewitness. The real question is whether the witness had a sufficient basis for identifying the defendant apart from the improper view. The matter was discussed in *State v. Casdorph*, 159 W.Va. 909, 230 S.E.2d 476 (1976), where this Court said in Syllabus Point 3:

In determining whether an out-of-court identification of a defendant is so tainted as to require suppression of an in-court identification the court must look to the totality of the circumstances and determine whether the identification was reliable, even though the confrontation procedure was suggestive, with due regard given to such factors as the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

See also *State v. Franklin*, 191 W.Va. 727, 448 S.E.2d 158 (1994), *State v. Williams*, 181 W.Va. 150, 381 S.E.2d 265 (1989), and *State v. Gravely*, 171 W.Va. 428, 299 S.E.2d 375 (1982).

With these factors in mind, this Court has examined the circumstances relating to the photo arrays and the identification of the defendant in the present case. As previously indicated, the evidence shows that during the robbery of the Apple Valley Supermarket, all the witnesses who identified the defendant at trial were within a few feet of him for a period of one or more minutes. Although they were somewhat shocked, all gave similar descriptions of the perpetrator of the crime, except Melissa Miller who could not recall

that he had a mustache. Each of the witnesses was firm in his or her identification of the defendant as the perpetrator of the crime. Finally, the length of time between the commission of the crime and trial was not so great as to make the perpetrator's features unidentifiable. All these circumstances suggest to this Court that there was a substantial basis by which the witnesses could identify the defendant as the perpetrator of the crime, a basis which was fully independent of the photo identifications and fully independent of the fact that two of the witnesses observed the defendant as he was being taken to magistrate court.

On top of all this, it does not appear that eyewitness John Mason viewed either the missing photo array number two or the defendant being led to magistrate court. His in-court identification, therefore, cannot be said to have arisen from either the missing array or the incident at magistrate court.

In particular circumstances the Court has indicated that the failure of the State to allow the defendant to examine a photo display used during pre-trial identification procedures constitutes error. See e.g. *State v. Pratt*, 161 W.Va. 530, 244 S.E.2d 227 (1978). Similarly, the Court has indicated that where a defendant is viewed by a witness in a one-on-one confrontation prior to trial, the admission of such witness in-court identification of the defendant can constitute error. *State v. Graveley, supra.* However, in the present case where the evidence shows that all the witnesses had an ample opportunity to view and fix the perpetrator's features in their minds during the commission of the crime, where it is evident that the impressions made during the commission of the crime were stronger than those made during the photo arrays and in the one-on-one confrontations, where the witnesses were firm in their convictions, and where one witness did not participate in a one-on-one confrontation and apparently did not view a photo array, then *State v. Casdorph, supra*, indicates that what occurred in the present case was not prejudicial error.

With regard to the defendant's claim that his right to counsel was violated when he was viewed by two witnesses while he was being

taken to magistrate court, this Court notes that in *State v. Sheppard,* 172 W.Va. 656, 310 S.E.2d 173 (1983), the court ruled that the admission of evidence of an improper out-of-court viewing was harmless where other witnesses, who did not participate in the out-of-court viewing positively identified the defendant in court as the perpetrator of the crime, and as previously indicated in the present case, witnesses other than those who saw the defendant being taken to magistrate court, positively identified the defendant in court as the perpetrator of the crime.

■ The defendant's next claim is that the trial court erred when it refused to grant a mistrial because of the remark made by Trooper Lucas to the effect that the defendant had indicated that he had committed crimes because he was on drugs and alcohol.

In his brief on this point the defendant states: "[I]t does not appear from the record that the State's actions were intentional ..."

This assignment of error grows out of a colloquy which occurred between the prosecuting attorney and Trooper Lucas in the course of the defendant's trial. In that colloquy the following testimony was adduced:

Q: And would you tell the jury what com ... those comments or statements were?

A: OK. Then he said, "I feel sorry for the son-of-a-bitch that ratted me out on the Apple Valley thing".

Q: Did he make any other comments to you?

A: "He ... yes, he said after ... drugs and alcohol now's out of his system. That's why he committed crimes."

Recently in *State v. McGhee,* 193 W.Va. 164, 455 S.E.2d 533 (1995), this Court discussed what should be done when other "crimes" evidence is injected into a trial. Among other things, this Court indicated that a limiting instruction is appropriate if, in fact, the evidence is prohibited by other crimes evidence. In *State v. McGinnis,* 193 W.Va. 147, 455 S.E.2d 516 (1994), the Court indicated that trial courts are not required to give limiting instructions *sua sponte.*

In the present case, defense counsel moved for a mistrial rather than a limiting instruction or for a hearing on what specifically was

intended by the prosecutor in eliciting the remark in question. Additionally, in the context of what was said, the reference to "crimes" might have been construed as relating to the crime being charged rather than other "crimes."

On this point the Court essentially concludes that the defendant has failed to show that the trial court erred in refusing to grant a mistrial or that his conviction should be reversed by the remark in question.

■ The defendant also claims that the circuit court erred in denying him public funds to secure the services of experts in the field of eyewitness identification. Prior to trial, the defendant requested that the trial court provide public funds to secure the services of Dr. Kenneth Anchor, a psychiatrist, who, the defendant claims, would have been able to testify to the jury regarding the psychology of eyewitness identification. The defendant takes the position that the key issue at trial was whether the witnesses' identifications of the defendant were reliable. The defendant claims that Doctor Anchor's specialized knowledge as to how an aggravated robbery would affect an eyewitness recollection would have assisted the jury in determining whether or not the perpetrator of the crime charged was, in fact, the defendant.

In *State ex rel. Foster v. Luff,* 164 W.Va. 413, 264 S.E.2d 477 (1980), we recognized that where good cause is shown for an expert, a trial court's arbitrary refusal to authorize one may result in reversible error. As previously stated, in the present case, not one, but several witnesses were present during the robbery. Although the Court believes that an argument might be made that an expert might have cast doubt on the identification made by one witness, the Court does not see how the testimony could have affected the overall outcome of the case. For this reason the Court cannot conclude that the defendant has shown that the trial court committed reversible error on this point.

The defendant next claims that the trial court erred in refusing to ask all the voir dire questions which he requested that the court present to the prospective jurymen. The questions, defendant's questions twenty, twenty-one, twenty-two, twenty-seven and

twenty-eight, would have elicited from the members of the jury panel information as to whether they or their blood relatives had been treated by a psychiatrist or psychologist, and would also have elicited information relating to the juror's knowledge of psychiatry and psychology. The defendant claims that the trial court's refusal to ask such questions infringed upon his ability to determine whether the jurors were free from prejudice and bias and were, thus, affected by his ability to exercise his pre-emptory challenges.

 Recently, in Syllabus Point 1 of *Michael v. Sabado*, 192 W.Va. 585, 453 S.E.2d 419 (1994), the Court restated its long-standing rule relating to the authority of a trial judge to control the scope of voir dire. The Court said:

> " ' "[T]he inquiry made of a jury on its *voir dire* are within the sound discretion of the trial court and not subject to review, except when the discretion is clearly abused." Syl. pt. 2, *State v. Beacraft*, 126 W.Va. 895, 30 S.E.2d 541 (1944) [, *overruled on other grounds, State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986), *overruled on other grounds, State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990) ].' Syllabus Point 2, *State v. Mayle*, 178 W.Va. 26, 357 S.E.2d 219 (1987)." Syllabus Point 5, in part, *State v. Derr*, 192 W.Va. 165, 451 S.E.2d 731 (1994).

After reviewing the facts of the present case, the Court cannot determine that whether a jury did or did not have knowledge of principles of psychology or had ever been treated for an emotional or mental illness could have had a substantial bearing on the outcome of this case. Accordingly, this Court believes that the trial judge's limitation of *voir dire* was within his discretion and did not constitute error.

Lastly, the defendant claims that the trial court should have granted a directed verdict for him at the close of the state's case.

 The circumstances under which a verdict should be directed for a defendant in a criminal case in West Virginia are set forth in Syllabus Point 1 of *State v. Fischer*, 158 W.Va. 72, 211 S.E.2d 666 (1974), as follows:

> "Upon motion to direct a verdict for the defendant, the evidence is to be viewed in

light most favorable to prosecution. It is not necessary in appraising its sufficiency that the trial court or reviewing court be convinced beyond a reasonable doubt of the guilt of the defendant; the question is whether there is substantial evidence upon which a jury might justifiably find the defendant guilty beyond a reasonable doubt." *State v. West*, 153 W.Va. 325 [168 S.E.2d] 716 (1969).

See also, *State v. Cook*, 175 W.Va. 185, 332 S.E.2d 147 (1985).

 In the present case, there was universal agreement between the witnesses who were present during the robbery as to the identity of the defendant as the perpetrator of the crime. The evidence also clearly showed that the crime had been perpetrated. Although there were some small inconsistencies in the testimony of some of the witnesses, this Court cannot conclude that when the evidence was viewed in its entirety in a light most favorable to the State that it was not sufficient evidence from which the jury might have found the defendant guilty beyond a reasonable doubt.

For the reasons stated the judgment of the Circuit Court of Berkeley County is affirmed.

Affirmed.