536 S.E.2d 721

**STATE of West Virginia, Appellee,**

v.

**Banner CATLETT, Appellant.**

No. 25404.

Supreme Court of Appeals of
West Virginia.

Submitted March 23, 1999.

Decided July 14, 1999.

Dissenting Opinion of Justice
McGraw June 8, 2000.

Vito Mussomeli, Esq., Public Defender Corporation, Martinsburg, West Virginia, Attorney for Appellant.

Pamela Jean Games–Neely, Esq., Christopher C. Quasenbarth, Berkeley County Prosecuting Attorneys, Martinsburg, West Virginia, Attorneys for Appellee.

WORKMAN, Justice:

The defendant below and Appellant herein, Banner Catlett (hereinafter "Appellant"), appeals the final order of the Circuit Court of Berkeley County, entered on July 14, 1998, wherein the circuit court determined that Appellant should be placed with the West Virginia Department of Corrections (hereinafter "Department of Corrections") in order to best protect the public, as opposed to William R. Sharpe, Jr., Hospital (hereinafter "Sharpe"), where he had previously been housed. Appellant was indicted for first degree arson in 1996. His arson trial was held in June 1997, and he was found not guilty by reason of insanity.[1] The court committed Appellant to Sharpe pursuant to West Virginia Code § 27–6A–3 (1999)[2] and retained jurisdiction over him for two to twenty years, the maximum sentence then in effect for an arson conviction. In an unrelated case, Appellant was also indicted in February 1997, for first degree murder and attempted escape from the public safety officer who arrested him for the murder. This trial was held in April 1998, and Appellant was found guilty on both charges.[3] Appellant put forth an insanity defense in this trial, but it was rejected by the jury, who also did not recommend mercy on the first degree murder conviction. Appellant was sentenced to life imprisonment, without the possibility of parole, on the murder conviction and one to three years on the attempted escape conviction, such sentences to run consecutively. The separate trials, i.e. the trial on the arson charge and the trial on the murder and attempted escape charges, were both in the Circuit Court of Berkeley County, but before two different judges. Judge Steptoe presided over the arson trial and Judge Sanders presided over the murder and attempted escape trial.

Subsequent to the murder conviction, the prosecutor moved the court which convicted Appellant on the arson charge to dismiss its

1. Although the term insanity is not used in West Virginia Code § 27–6A–1 (1999), which is the code section that refers to whether a defendant is not criminally responsible by reason of mental illness, mental retardation or addiction, it is the phrase historically used to identify the defense set forth in that code section.

2. West Virginia Code § 27–6A–3 provides as follows:

    (a) After the entry of a judgment of not guilty by reason of mental illness, mental retardation or addiction, the court of record shall determine on the record the offense of which the person otherwise would have been convicted, and the maximum sentence he could have received. The court shall commit such defendant to a mental health facility under the jurisdiction of the department of health, with the court retaining jurisdiction over the defendant for the maximum sentence period.

    (b) If the defendant is released from an inpatient mental health facility while under the jurisdiction of the court, the court may impose such conditions as are necessary to protect the safety of the public.

3. Appellant has petitioned this Court to accept his petition for appeal of these convictions.

continuing jurisdiction over Appellant in order that he could be sent immediately to the state penitentiary on the murder and attempted escape convictions. After an evidentiary hearing on this matter, the judge who presided over the arson trial determined that Appellant suffers from an anti-social personality and a possible psychosis, which was drug induced, or schizophrenia; that Appellant's mental illness was not in an acute stage; that Appellant had refused medication for that mental illness for the seven months leading up to the hearing; that Appellant continued to be dangerous; that Sharpe was not a secure facility and had no forensic unit; that the Department of Health does not maintain a secure mental health facility; and that the placement of Appellant with the Department of Corrections would best protect the public, however, the court did not release Appellant from its jurisdiction.

The single issue on appeal before this Court is the propriety of the arson trial court's ruling discharging Appellant from his commitment at Sharpe to begin serving his murder sentence at the state penitentiary. Appellant argues that the circuit court erred when it released Appellant to the Department of Corrections because the circuit court had no authority to execute such a release under West Virginia Code § 27–6A–4 (1999).[4]

## I. Factual and Procedural History

Appellant was indicted for first degree arson in the February 1996 term of the Berkeley County Grand Jury, for setting fire to his grandfather's house on September 16, 1995. While awaiting trial on the arson indictment, Appellant was released from the South Central Regional Jail in December 1996. Appellant then traveled back to Berkeley County, where he committed a murder and attempted to escape from the arresting officer.[5] In the February 1997 term of the Berkeley County Grand Jury, he was indicted for first degree murder and attempted escape from a public safety official. On March 14, 1997, Appellant was committed to Sharpe for evaluation and treatment, but then was transferred to the

---

**4.** West Virginia Code § 27–6A–4 was amended in 1998. At the time of the disposition at issue in this case, West Virginia Code § 27–6A–4 (Supp. 1996) provided as follows:

(a) No later than thirty days prior to the release of a defendant because of the expiration of the court's jurisdiction, if the defendant's supervising physician believes that the defendant's mental illness or mental retardation or addiction causes the defendant to be dangerous to self or others, the supervising physician shall notify the prosecuting attorney in the county of the court having jurisdiction of such opinion and the basis therefor. Following this notification, the prosecuting attorney shall file a civil commitment application against the defendant, pursuant to article five [§ 27–5–1 et seq.] of this chapter.

(b) The court may discharge a mentally ill or addicted defendant from the court's period of jurisdiction prior to the expiration of the period specified in this section only when the court finds that the person is no longer mentally ill or addicted and that the person is no longer a danger to self or others. The court may discharge a mentally retarded defendant from the court's period of jurisdiction prior to the expiration of the period specified in this section only when the court finds that the person is no longer a danger to self or others. However, a defendant may not be released from the jurisdiction of the court when the defendant's mental illness is in remission solely as a result of medication or hospitalization or other mode of treatment if it can be determined within a reasonable degree of medical certainty that without continued therapy or hospitalization or other mode of treatment, the defendant's mental illness will make him a danger to self or others.

(c) Those persons committed under the provisions of this article may be released or discharged from the inpatient mental health facility only upon entry of an order from the court of record which committed the defendant finding that the defendant will not be a danger to self or others if so released, based upon the evidence introduced at the hearing.

(d) The court shall promptly conduct a hearing after receipt of the physician's notification referred to in subsection (a) of this section. The clerk shall notify the prosecuting attorney and the victim or next of kin of the victim of the offense for which the person was committed of the hearing. The burden shall be on the victim or next of kin to the victim to keep the court apprised of that person's current mailing address.

The 1998 amendment, effective June 12, 1998, makes a few minor word changes in sub-sections (a), (c) and (d). The 1998 amendment rewrote sub-section (b) to further explain the situation of when a defendant's mental illness is in remission solely as a result of medication or hospitalization or other mode of treatment. See W.Va.Code § 27–6A–4(b) (1999).

**5.** The record is unclear when and in what manner this murder occurred.

Eastern Regional Jail on May 9, 1997, to await trial on the arson charge.

On June 4, 1997, a Berkeley County jury found Appellant not guilty by reason of insanity on the arson charge. Based on the verdict of the jury, the trial court, Judge Steptoe presiding, ordered Appellant to be committed to a secure in-state mental health facility for treatment, with the court retaining jurisdiction over Appellant for a period of twenty years in accordance with West Virginia Code § 27–6A–3. Appellant was immediately sent to Sharpe and began receiving treatment for his mental illnesses.

While at Sharpe, Appellant received treatment in the form of psychotropic medications and psychiatric therapy. Sharpe allowed him to participate in a program that awarded passes to freely roam the hospital grounds for positive responses to treatment. After receiving such a pass in September 1997, Appellant escaped the hospital grounds and made his way to California, where his grandmother lives. Following his apprehension by California authorities, Appellant was extradited to West Virginia in October 1997. Upon return to West Virginia, Appellant was housed at the Eastern Regional Jail, except when temporarily transferred elsewhere for mental evaluation, while awaiting trial on the murder and attempted escape charges.

Appellant was deemed competent to stand trial on the murder and attempted escape charges and on April 30, 1998, a Berkeley County jury found Appellant guilty of first degree murder, without a recommendation of mercy, and attempted escape from a public safety officer. Although Appellant put forth an insanity defense, such defense was rejected by the jury. On May 22, 1998, the trial court, Judge Sanders presiding, sentenced Appellant to life in the state penitentiary on the murder conviction and to one to three years on the conviction of attempting to escape from a public safety officer, with the sentences to run consecutively. The order of conviction and sentencing issued by the court presiding over the murder trial was silent regarding Appellant's previous disposition in the arson case. No challenge whatsoever is made to this conviction in this appeal.

Because of the conflicting orders regarding placement of Appellant, a dispute arose between the State and Appellant's defense counsel regarding the appropriate placement of Appellant. The State moved the arson trial court to discharge Appellant from his commitment at Sharpe so that he could begin his sentence in the state penitentiary on the murder and attempted escape convictions. On June 9, 1998, the arson trial court held an evidentiary hearing on the State's motion seeking Appellant's discharge from Sharpe. The court heard testimony from two psychologists and a psychiatrist who had treated Appellant at either Sharpe or the Eastern Regional Jail, as well as staff at the jail.

Harold D. Slaughter, a psychologist at the Eastern Regional Jail, testified during the June 9, 1998, hearing that Appellant suffers from an anti-social personality, as well as drug-induced psychosis and that Appellant had refused to take his prescribed medications since November 1997. Dr. Martin L. Boone, a neuropsychologist at Sharpe, testified that Appellant has been diagnosed as schizophrenic and anti-social. He also testified that Sharpe is not a secure facility that can handle persons likely to escape. Dr. Scott Pollard, a psychiatrist at Sharpe, testified that Appellant has been diagnosed as schizophrenic and that Sharpe does not maintain a secure facility.

Based on the testimony and arguments offered at the hearing, the arson trial court granted the State's motion and ordered that Appellant be sent to the Department of Corrections, after finding that Appellant suffers from an anti-social personality and a possible psychosis, which was drug induced, or schizophrenia; that Appellant's mental illness was not in an acute stage; that Appellant had refused medication for that mental illness for the seven months leading up to the hearing; that Appellant continued to be dangerous; that Sharpe was not a secure facility and had no forensic unit; that the Department of Health does not maintain a secure mental health facility; and that the placement of Appellant with the Department of Corrections would best protect the public. The court further ordered that it shall maintain jurisdiction over Appellant while he is in the

state penitentiary and that Appellant shall have the benefit of psychiatric services while entrusted to the Department of Corrections, however, the court did not release Appellant from its jurisdiction.

## II. Standard of Review

In the instant case, Appellant is challenging the circuit court's statutory authority to order his release to the Department of Corrections. "To the extent this issue presents purely a question of law and statutory interpretation, our review is plenary and de novo." *State v. Smith,* 198 W.Va. 702, 707, 482 S.E.2d 687, 692 (1996). In addition, "[i]n reviewing challenges to the findings and conclusions of the circuit court, we apply a two prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of neglect standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to *de novo* review." *Phillips v. Fox,* 193 W.Va. 657, 661, 458 S.E.2d 327, 331 (1995) (emphasis added); *see also* Syl. Pt. 1, *Burnside v. Burnside,* 194 W.Va. 263, 460 S.E.2d 264 (1995).

## III. Discussion

■ The issue before this Court is limited to the specific question of whether the trial court erred when it placed Appellant in the custody of the Department of Corrections to be housed at the state penitentiary pursuant to West Virginia Code §§ 27–6A–3 and –4. Appellant argues that the trial court had no authority to remove him from Sharpe, and that such action violated West Virginia Code § 27–6A–4. First, Appellant argues that when a defendant is found not guilty by reason of insanity, West Virginia Code § 27–6A–3 requires mandatory commitment of the defendant to a mental health facility under the jurisdiction of the department of health, "with the court retaining jurisdiction over the defendant for the maximum sentence period." *Id.* Second, Appellant argues that pursuant to West Virginia Code § 27–6A–4, a defendant found not guilty by reason of insanity can only be released from the court's jurisdiction if that court finds that (1) the defendant is no longer a danger to himself or others, and (2) the defendant is no longer

mentally ill. Appellant argues that in this case, none of these prerequisites were met.

Conversely, the State argues that the arson trial court was authorized by West Virginia Code §§ 27–6A–3 and –4 to discharge Appellant from Sharpe Hospital and place him with the Department of Correction for the service of his sentence on the murder and attempted escape convictions. The State contends that when these two code sections are read together, the court has the discretion to determine the appropriate disposition for Appellant.

At the outset, we sympathize with the dilemma of the trial courts in this case in sorting out the proper course of action. The legal issue encountered in this case was clearly not contemplated by the legislature when it drafted West Virginia Code §§ 27–6A–3 and –4. Otherwise, specific language could have been included in the statute with regard to the relationship between an insanity commitment and a subsequent valid criminal conviction. Understandably, the arson trial court was faced with a situation it found intolerable; that a defendant found not guilty be reason of insanity on an arson charge but convicted of murder and attempted escape (by a jury that determined his defense of insanity was not valid) should be allowed to be returned to a mental health facility from which he had already escaped.

■ This Court examined West Virginia Code §§ 27–6A–3 and –4, and determined how they interrelate in *State v. Smith,* 198 W.Va. 702, 482 S.E.2d 687. In *Smith,* the issue presented to this Court was whether due process and equal protection guarantees were violated by allowing the circuit court to retain jurisdiction over a defendant found not guilty by reason of insanity for the maximum period of time for which she could have been sentenced had she been convicted of the offense charged. In finding that such guarantees were not violated, we held in syllabus point two of *Smith* as follows:

West Virginia Code §§ 27–6A–3 and –4 (Supp.1996), read in pari materia, generally provide a court flexibility in exercising and retaining its jurisdiction up to the maximum sentence period, with consideration given to the current mental state and dangerousness of a person found not guilty

by reason of mental illness. If not sooner terminated by the court, its jurisdiction automatically will expire at the end of the maximum sentence period.

198 W.Va. at 704, 482 S.E.2d at 689. Thus, both by statute and case law, a trial court has broad discretion to determine the appropriate disposition of those found not guilty by reason of insanity.

West Virginia Code § 27–6A–4(b) provides that "[t]he court may discharge a mentally ill or addicted defendant from the court's period of jurisdiction prior to the expiration of the period specified in this section only when the court finds that the person is no longer mentally ill or addicted and that the person is no longer a danger to self or others." To discharge Appellant from his confinement outright into the public, would certainly require a finding by the arson trial court that Appellant was no longer mentally ill *and* no longer a danger to self or others. *See* W.Va.Code § 27–6A–4. However, West Virginia Code § 61–2–2 (1997) provides that "[m]urder of the first degree shall be punished by confinement in the penitentiary for life." Thus, we must read these two statutes together in the context of the particular case before us.

In the murder trial, the defense of insanity was explicitly raised and rejected by the jury under proper instruction from the court. Thus, that subsequent conviction constituted a judicial determination that Appellant was no longer mentally ill. As to the second criteria for discharge from jurisdiction by the court which presided over the finding of not guilty by reason of insanity, involving a finding that the defendant is no longer a danger to self or others, that requirement clearly was intended by the legislature to be an additional safeguard for the public before release of a defendant from all confinement or restriction. Although a person may have some degree of mental illness, and even be a danger to himself or others as a result, the requirement that one not be a danger to self or others in the context of the insanity stat-

ute clearly is a measure that is intended at least in part to protect the public [6] when the question of release from all confinement is under consideration. It does not constitute a bar to a defendant being sentenced to a penal facility after a valid criminal conviction.

In *People v. Webb*, 458 Mich. 265, 580 N.W.2d 884 (1998), the Supreme Court of Michigan faced a somewhat analogous sentencing dilemma. In that case, the defendant was found not guilty by reason of insanity in the murder of his father, and, guilty but mentally ill, of second-degree murder in the shooting death of his father's friend in the same trial. The circuit court sent the defendant to the Department of Corrections. The defendant appealed, arguing that he should have been sent first to the Center for Forensic Psychiatry, rather than being sent directly to prison, because Michigan statute, M.C.L. § 330.2050(1); M.S.A. § 14.800 (1050), provides that "[t]he court shall immediately commit any person who is acquitted of a criminal charge by reason of insanity to the custody of the center for forensic psychiatry." *Webb*, 580 N.W.2d at 891. The Supreme Court of Michigan rejected this argument because another Michigan statute, M.C.L. § 768.36(3); M.S.A. 28.1059(3) allows a defendant found guilty but mentally ill to be committed to the custody of the Department of Corrections and allows treatment to be provided by either the Department of Corrections or the Department of Health. *Webb*, 580 N.W.2d at 892.

Although West Virginia does not have any statutory scheme similar to the Michigan statute which would give a court discretion to sentence a defendant found not guilty by reason of insanity to the Department of Corrections [7], we find the reasoning employed in *Webb* to be instructive. When reviewing the first statute, which requires a defendant found guilty, but mentally ill, to be sent immediately to the Center for Forensic Psychiatry, the Michigan Supreme Court found that the statute is "clearly designed to estab-

---

6. Such reasoning is supported by West Virginia Code § 27–6A–3(b), which provides that "[i]f the defendant is released from an in-patient mental health facility while under the jurisdiction of the court, *the court may impose such conditions as are necessary to protect the safety of the public.*" (Emphasis added.)

7. West Virginia Code § 27–6A–3(a) specifically provides that after a defendant is found not guilty by reason of insanity, "[t]he court shall commit such defendant to a mental health facility under the jurisdiction of the department of health...."

lish a procedure by which it can be determined whether the person can safely reenter society" and that a reading of the full text of that statute "leaves no doubt that it is a measure to promote public safety." *Id.* at 891. Thus, while criminal defendants enjoy certain fundamental rights by statute where they are determined not to be criminally responsible by reason of mental illness or insanity, a significant component of such statutes is aimed at protection of the public from potential harm at the hands of such individuals.

■ Thus, where a defendant is found not guilty of a criminal charge by virtue of the defense of insanity, and subsequently is found guilty of another criminal charge, the intervening conviction constitutes a judicial determination that the defendant is no longer mentally ill, and no longer a danger to self or others, as those terms are used in West Virginia Code § 27–6A–4 (1999), and the defendant can be sentenced accordingly.[8] Therefore, we remand with directions that the trial court enter a final order consistent with our holding.

■ Finally, Appellant contends that the court should have ordered a psychiatric evaluation to aid it in determining his appropriate disposition. West Virginia Code § 27–5–9(c)(2) (1999) requires that all patients committed to a mental health facility must have "[c]areful and periodic psychiatric reevaluation no less frequently than once every three months." The record in this case indicates that Appellant had not had a psychiatric reevaluation within the three months preceding the hearing before the arson trial court. Appellant argues that West Virginia Code § 27–6A–4 implicitly requires that such an evaluation must have occurred before a defendant is released. A careful reading of the statute shows that no such requirement in specifically enumerated. Although West Virginia Code § 27–5–9(c)(2) clearly requires such an evaluation every three months, there is no indication that such an evaluation is a condition of release pursuant to West Virginia Code § 27–6A–4.

8. Such criminal sentence, however, does not preclude the court wherein the defendant was found not guilty by reason of insanity from retaining jurisdiction over the defendant pursuant to West Virginia Code § 27–6A–3 at the expiration of the criminal sentence upon proper hearing and determination on whether the criteria for release of jurisdiction under West Virginia Code § 27–6A–4 are present.

## IV. Conclusion

Based upon the foregoing reasons, we hold that the circuit court did not err in releasing Appellant to the Department of Corrections in order that he may serve the sentence for his murder and attempted escape convictions. Accordingly, the final order of the Circuit Court of Berkeley County is hereby affirmed, however, the case is remanded with directions.

Affirmed; remanded with directions.

Justice MAYNARD concurs.

McGRAW, Justice, dissenting:

(Filed June 8, 2000)

Like many of the cases we face on this Court, this case presents a fact pattern for which our case law and statutes have not prepared us. The defendant, who had been charged with arson, committed a murder before his arson trial ever occurred. That first jury, correctly limited to the facts of the arson charge, found the defendant not guilty by reason of insanity. A later jury in a subsequent case, confronted with a more heinous set of circumstances, rejected the insanity defense, and found the defendant guilty of murder. So we are faced with two difficult questions: is the defendant "insane" or not, and where should he be sent in accordance with the law?

I sympathize with both the majority and the circuit court judge in facing this dilemma of either putting a mentally ill defendant in with the general prison population or sending him back to a facility from whence he had already escaped. However, I cannot agree with the holding of the majority opinion.

In saying that an intervening conviction constitutes a judicial determination of sanity, the Court is essentially making appellate judges out of the jurors in the second trial, and allowing them to overturn the prior decision. Of course, the State does not get to appeal a criminal case; our protections against double jeopardy do not allow the State a second bite at the apple.

In general, we apply a binary analysis to a person's sanity. A person is either guilty of the crime ("sane"), or is not guilty by reason of insanity. If found not guilty by reason of insanity, there is a prescribed course of action set forth in the law that a court must follow. Of course, because of the unusual situation in this case, two juries were asked to judge the defendant's sanity at two different points in time. Thus the defendant, according to the two juries, was both insane and sane—deserving of both hospitalization, and incarceration.

This case underscores our need in West Virginia to provide a truly secure facility where individuals such as the defendant may receive the proper treatment, while ensuring that the more dangerous patients cannot escape. Mixing the mentally ill in with the general prison population does a disservice to all. It makes prison life more dangerous for inmates and guards, it works a grave injustice upon the mentally ill defendant, and it prevents society from reaching its goal of a fair and equitable criminal justice system. Because the majority opinion leaves us with such a result, I respectfully dissent.

I am authorized to state that Justice STARCHER joins in this dissent.