536 S.E.2d 728

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Banner Cornel CATLETT, Defendant Below, Appellant.**

No. 26649.

Supreme Court of Appeals of West Virginia.

Submitted March 21, 2000.

Decided June 16, 2000.

Dissenting Opinion of Justice Starcher July 20, 2000.

See also: 207 W.Va. 740, 536 S.E.2d 721.

S. Andrew Arnold, Esq., Shepherdstown, West Virginia, Attorney for Appellant.

Pamela Jean Games–Neely, Esq., Berkeley County Prosecuting Attorney, Christopher C. Quasebarth, Esq., Berkeley County Assistant Prosecuting Attorney, Martinsburg, West Virginia, Attorneys for Appellee.

PER CURIAM:

This case is before this Court upon appeal of a final order of the Circuit Court of Berkeley County entered on February 10, 1999. Pursuant to that order, the appellant and defendant below, Banner Cornel Catlett, was sentenced to life in prison without mercy upon a jury verdict of guilty of first degree murder. The appellant also received a one-to-three-year sentence for his conviction of attempted escape from a public safety officer. In this appeal, the appellant contends that the circuit court erred by not granting his motion for judgment of acquittal because the evidence presented at trial did not establish beyond a reasonable doubt that he was criminally responsible for his actions at the time of the offense. The appellant also contends that the circuit court should have granted his motion for acquittal because there was insufficient evidence of premeditation to support a first degree murder conviction. The appellant further asserts that the circuit court erred by not declaring a mistrial after one of the State's expert witnesses mentioned the existence of excluded evidence. Finally, the appellant asks that this Court reconsider its ruling with regard to the trial court's order removing him from Sharpe Hospital and placing him in the custody of the Department of Corrections to begin his prison sentences.[1]

This Court has before it the petition for appeal, the entire record, and the briefs and argument of counsel. For the reasons set forth below, the final order of the circuit court is affirmed.

I.

The appellant was indicted in February 1996, for the arson of his grandfather's house. While awaiting trial, the appellant was transported to the South Central Regional Jail at the State's request for a competency/criminal responsibility evaluation. Upon his return to the Eastern Regional Jail, the appellant was released on bond.

Approximately one month after being released on bond, the appellant entered the trailer home of an acquaintance, Andrew Mason, and fatally shot him twice in the head. Subsequently, the appellant was arrested for murder. He attempted to escape during his arraignment on the murder charge.

On June 4, 1997, the appellant was tried on the arson charge in Berkeley County. He was found not guilty by reason of mental illness and was placed in Sharpe Hospital, a mental health facility, for a period not to exceed twenty years. In September 1997, the appellant escaped from Sharpe Hospital. He was located in California one month later and was returned to West Virginia after he waived extradition.

In February 1998, the appellant was indicted for the murder of Andrew Mason and for attempted escape from a public safety officer. At trial, the appellant never disputed that he killed Andrew Mason, but instead, claimed that he was not criminally responsible at the time of the offense. On April 30, 1998, the appellant was found guilty of first-degree murder and attempted escape. He was sentenced to life without mercy for the first-degree murder conviction and one-to-three years for the attempted escape. Thereafter, the appellant was transferred from Sharpe Hospital to the custody of the West Virginia Department of Corrections to begin his prison sentences. This appeal followed.

1. See *State v. Catlett*, 207 W.Va. 740, 536 S.E.2d 721 (1999).

## II.

■ As his first assignment of error, the appellant contends that the circuit court erred by not directing a verdict of acquittal by reason of insanity. The appellant maintains that the evidence was insufficient to establish beyond a reasonable doubt that he was criminally responsible for his actions at the time of the offense. In Syllabus Point 3 of *State v. Taylor*, 200 W.Va. 661, 490 S.E.2d 748 (1997), this Court stated that,

" 'Upon motion to direct a verdict for the defendant, the evidence is to be viewed in light most favorable to the prosecution. It is not necessary in appraising its sufficiency that the trial court or reviewing court be convinced beyond a reasonable doubt of the guilt of the defendant; the question is whether there is substantial evidence upon which a jury might justifiably find the defendant guilty beyond a reasonable doubt.' *State v. West*, 153 W.Va. 325 [168 S.E.2d 716] (1969)." Syllabus Point 1, *State v. Fischer*, 158 W.Va. 72, 211 S.E.2d 666 (1974).

With respect to whether the evidence is sufficient to support the criminal conviction, this Court held in Syllabus Points 1 and 2, respectively, of *State v. Hughes*, 197 W.Va. 518, 476 S.E.2d 189 (1996):

"The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." Syl. Pt. 1, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

"A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent our prior cases are inconsistent, they are expressly overruled." Syl. Pt. 3, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

■ In support of his assertion that he was not criminally responsible at the time of the offense, the appellant presented the testimony of Dr. Scott Pollard, a psychiatrist at Sharpe Hospital and Dr. Martin Boone, a neuropsychologist from the West Virginia University School of Medicine. Both of these experts diagnosed the appellant as suffering from paranoid schizophrenia and fixed delusional beliefs. Specifically, Dr. Pollard testified that the appellant had a persistent delusional belief that a micro dot chip was planted behind one of his ears through which he received communications from people who were controlling his behavior.

In response, the State presented evidence that the appellant was sane at the time he murdered Andrew Mason. In this regard, Dr. David Clayman, a clinical psychologist, testified that he evaluated the appellant at the South Central Forensic Unit following the murder of Andrew Mason. Dr. Clayman testified that the appellant's problems stemmed from polysubstance abuse and antisocial personality. He stated that the appellant was faking a mental illness and there was nothing to indicate that the appellant lacked criminal responsibility at the time of the offense. Similarly, Dr. Daniel Thistlewaite, a psychiatrist, testified about the appellant's history of chronic substance abuse. He opined that the claimant's conduct was driven by abuse of drugs and alcohol. Dr. Thistlewaite further testified that based on his observations, he believed the appellant was malingering to avoid being charged with a crime or sent to prison. He stated that the

appellant presented different and inconsistent symptoms reflecting a refusal to cooperate not caused by psychosis. In addition to this expert testimony, the State presented the testimony of two employees of the Southern Regional Jail. They testified that the appellant independently told them that he had $100,000 if someone would help him escape.

■ Although the mental health experts offered differing opinions, we do not find that the circuit court erred by presenting the sanity issue to the jury. As this Court has previously noted, " '[t]he State's burden of proving sanity beyond a reasonable doubt does not mean that the sanity evidence must be entirely without contradictions." ' *State v. McWilliams,* 177 W.Va. 369, 379, 352 S.E.2d 120, 130 (1986) (citation omitted). Furthermore, when the evidence is viewed in its entirety in the light most favorable to the State, we find that there was substantial evidence presented to the jury from which it could conclude that the appellant was sane at the time he murdered Andrew Mason.

■ The appellant also contends that the circuit court should have granted his motion for acquittal on the grounds that the State presented no evidence of premeditation, a necessary element of first degree murder. The appellant claims that the evidence at trial showed that the murder was motiveless and random.

To the contrary, the State maintains that premeditation was proven by the appellant's statement which he gave to State Trooper Jason Laing after his arrest. During his testimony, Trooper Laing read the appellant's statement which related the events leading up to Andrew Mason's death. The appellant told Trooper Laing that he walked through the woods to Mason's house, kicked in the front door, pointed the gun at Mason and said "this is from the river of death." He then pulled the trigger, but the gun did not fire. The appellant lowered the gun and Mason asked what was going on. The appellant began laughing and said he was going spotlighting for deer. While telling Mason why he was there, the appellant corrected the weapon malfunction. He then pulled the trigger again shooting Mason in the head.

Mason fell to the floor in the kitchen, and the appellant went to search the other rooms in the trailer to see if Mason's roommate was at home. When he did not find Mason's roommate, the appellant returned to the kitchen and shot Mason again before leaving the trailer. The forensic pathologist testified that Mason was alive when he sustained each gun shot and that either shot would have been fatal.

■ In Syllabus Point 5 of *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995), this Court held that:

Although premeditation and deliberation are not measured by any particular period of time, there must be some period between the formation of the intent to kill and the actual killing, which indicates the killing is by prior calculation and design. This means there must be an opportunity for some reflection on the intention to kill after it is formed.

Based on the appellant's statement, the jury could have easily concluded beyond a reasonable doubt that the appellant acted with premeditation and deliberation. The jury could have determined that the appellant formulated his intent to kill on the way to Mason's trailer, while he was standing before Mason fixing the gun so it would fire, or when he was looking for Mason's roommate. In any event, the State clearly presented sufficient evidence of first-degree murder to prevent the granting of a motion for acquittal.

■ The appellant next argues that the trial court should have declared a mistrial after one of the State's experts mentioned the existence of excluded evidence. During his testimony, Dr. Clayman alluded to the fact that his opinion was based, in part, on evidence that could not be presented to the jury. Dr. Clayman was referring to the fact that the claimant escaped from Sharpe Hospital in September 1997. Prior to trial, the circuit court granted the appellant's motion in limine to exclude this evidence. The appellant argues that these references suggested to the jury that Dr. Clayman's opinion should be given more weight because it was based on additional evidence not considered by the other experts. He contends that the

circuit court should have granted a mistrial because the reference to excluded evidence prejudiced the jury against the defense experts.

The record shows that counsel for the appellant objected at least once during Dr. Clayman's testimony when he referred to the excluded evidence and moved for a mistrial at the conclusion of his testimony. Alternatively, the appellant's counsel moved to strike Dr. Clayman's entire testimony. As a final option, the appellant's counsel requested that the jury be given a curative instruction. After some discussion, the circuit court decided to give the curative instruction. Both the appellant and the State agreed that a curative instruction was appropriate.

■ In Syllabus Point 2 of *State ex rel. Dandy v. Thompson,* 148 W.Va. 263, 134 S.E.2d 730 (1964), *cert. denied,* 379 U.S. 819, 85 S.Ct. 39, 13 L.Ed.2d 30 (1964), this Court held that:

> "The 'manifest necessity' in a criminal case permitting the discharge of a jury without rendering a verdict may arise from various circumstances. Whatever the circumstances, they must be forceful to meet the statutory prescription." [Syllabus Point 2], *State v. Little,* 120 W.Va. 213, [197 S.E. 626 (1938) ].

This Court further explained that "[w]here the trial court erroneously permits inadmissible matters to be introduced into evidence, such error does not create a manifest necessity for a mistrial within the meaning and intent of Code, 1931, 62–3–7." [2] Syllabus Point 1, *Thompson.* This Court has also stated that " ' "[o]rdinarily where objections to questions or evidence by a party are sustained by the trial court during the trial and the jury instructed not to consider such matter, it will not constitute reversible error." Syl. pt. 18, *State v. Hamric,* 151 W.Va. 1, 151 S.E.2d 252 (1966).' Syl. pt. 3, *State v. Lusk,* 177 W.Va. [517], 354 S.E.2d 613 (1987)." Syllabus Point 2, *State v. Ayers,* 179 W.Va. 365, 369 S.E.2d 22 (1988). Given the fact that the circuit court gave a curative instruction in this case which the parties agreed to, we do not find that the circuit court abused its discretion by denying the appellant's motion for a mistrial.

■ Finally, the appellant asks this Court to reconsider its prior decision affirming the circuit court's order removing him from Sharpe Hospital and placing him in the custody of the Department of Corrections to begin his prison sentences. Having thoroughly addressed this issue in *State v. Catlett,* 207 W.Va. 740, 536 S.E.2d 721 (1999), we decline to reconsider our decision on the basis of res judicata. *See* Syllabus Point 4, *Blake v. Charleston Area Medical Center, Inc.,* 201 W.Va. 469, 498 S.E.2d 41 (1997).

Accordingly, for the reasons set forth above, the final order of the Circuit Court of Berkeley County entered on February 10, 1999, is affirmed.

Affirmed.

STARCHER, Justice, dissenting:

(Filed July 20, 2000)

The majority opinion holds—incorrectly, I believe—that a "curative" instruction adequately dealt with the fact that the state's expert witness on the sole issue of the defendant's "sanity" volunteered *four times* to the jury that there was other significant evidence that "he couldn't talk about"—evidence that allegedly supported the expert's conclusion that the defendant was not suffering from a brain disorder.

(This same expert did not interview the defendant before his murder trial. But he did interview the same defendant before the same defendant's earlier arson trial, a trial in which this expert's opinion was *not* credited by the jury. In his earlier arson trial, not many months before his murder trial, this same defendant was found "not guilty by reason of insanity.")

In the instant case, the expert's repeated volunteering to the jury that *there was other important and probative evidence that the*

---

**2.** W.Va.Code § 62–3–7 (1923) provides that "in any criminal case the court may discharge the jury, when it appears that they cannot agree in a verdict, or that there is manifest necessity for such discharge."

*Court had prohibited the jury from hearing* suggests that the expert had yielded to a common temptation, and was engaging in impermissible witness advocacy.

A verdict based on such testimony—about a defendant whom two trained medical professionals and a previous jury had found to have a serious brain disorder—is simply not sustainable.

This may have been a terrible miscarriage of justice. A new trial should be awarded. Accordingly, I dissent.