# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

vs)  **No. 15-0585** (Berkeley County 12-F-37)

**Tyler S. Munson,**
**Defendant Below, Petitioner**

**FILED**

**June 3, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Tyler S. Munson, by counsel B. Craig Manford, appeals his convictions in the Circuit Court of Berkeley County for the offenses of robbery in the first degree, burglary, conspiracy to commit robbery, and assault in the commission of a felony. Respondent State of West Virginia, by counsel Cheryl K. Saville, filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

Carrol Snyder ("the victim") is a seventy-eight year old man, who owns and operates a coin and pawn shop out of his residence, along with his son-in-law. On November 28, 2011, he was attacked in his shop and a number of items were stolen valuing between $3000-$4000. As a result of the attack, the victim had bleeding in his brain and numerous lacerations on his head, was disoriented, and did not know where he was. At the hospital, the victim gave a statement to police identifying his assailants as white males - one taller and skinnier, the other shorter and stockier. He also said that the men left in the direction of the Heritage Inn, a few blocks away from the scene of the crime. On November 30, 2011, Trooper Conner of the West Virginia State Police presented an array of black and white mug shot photos to the victim. All of the males in the photographs were in their early twenties, and had varying degrees of facial hair. Petitioner's photo was included in the photo line-up as Number 2. The victim was unable to identify petitioner as his assailant, stating his assailant could be number 1 or number 6, but that he was unsure. The victim was never again shown the photo-lineup.

Due to poor health, the victim was deposed prior to trial. Petitioner was present for the deposition, shackled and dressed in an orange jumpsuit from the jail. During the deposition, the victim identified petitioner as his assailant. Petitioner objected at that time to the victim's

1

identification of petitioner.[1] The victim was also present at a preliminary hearing, where petitioner was again shackled and dressed in orange.

Petitioner's case went to trial September 25, 2012. At the close of the State's case-in-chief, petitioner's counsel made a motion for judgment of acquittal pursuant to Rule 29 of the West Virginia Rules of Criminal Procedure. The court denied that motion. Petitioner did not present any evidence at trial. The jury found petitioner guilty to the offenses of burglary, first degree robbery, conspiracy to commit robbery, and assault during the commission of a felony. Following his conviction and prior to sentencing, petitioner filed a motion for new trial that was denied. The trial court sentenced petitioner on November 29, 2012, to forty-four years in the penitentiary for his conviction of first degree robbery, not less than one nor more than five years in the penitentiary for his conviction of conspiracy to commit robbery; not less than one nor more than fifteen years for his conviction of burglary; and not less than two nor more than ten years for the offense of assault in the commission of a felony.[2] The circuit court ordered petitioner to serve these sentences consecutively.

Upon request, the Circuit Court of Berkeley County re-sentenced petitioner in order to allow him the opportunity to perfect an appeal to this Court. Petitioner now appeals the May 19, 2015, re-sentencing order, claiming that the victim's in-court identification was improper, and that there was insufficient evidence to sustain his convictions.

Requesting a new trial, petitioner claims that the circuit court (1) committed plain and prejudicial error by allowing the victim to make an in-court identification of him, and (2) that the circuit court committed error when it did not direct a verdict in favor of petitioner. In reviewing petitioner's challenge to the findings and conclusions of the circuit court, we apply the following standard of review:

> We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review."

*State v. Hutton*, 235 W.Va. 724, 727, 776 S.E.2d 621, 624 (2015).

Petitioner first complains that the circuit court improperly allowed the victim to identify him in court. As grounds for this motion, petitioner argues (1) that the victim had no opportunity to view his assailants at the time of the crime; (2) that during the assault, the victim was trying to save his life and fend off the attack, and did not properly view his assailants; (3) the description the victim provided of his assailants was vague and non-descriptive; (4) it was obvious that the victim merely identified petitioner based upon viewing him in court, shackled and clad in a jail

---

[1] Prior to the deposition, neither the State nor petitioner's defense counsel were aware of the photo lineup, and only became aware of it when the victim testified to being shown the photo array during the deposition.

[2] These sentences were to run consecutive to sentences petitioner received in other unrelated cases contained in Berkeley County Case Nos. 11-F-118 and 11-F-169.

uniform; and (5) the victim could not identify his assailant immediately following the crime, but could identify him ten months later. The State of West Virginia does not address petitioner's argument directly in its brief, but argues that the evidence supporting petitioner's conviction outweighs any error regarding the in-court identification of petitioner by the victim.

The question of whether the government establishes a sufficient independent basis for the in-court identification is to be answered by an application of the "totality of the circumstances" test:

> ""[i]n determining whether an out-of-court identification of a defendant is so tainted as to require suppression of an in-court identification a court must look to the totality of the circumstances and determine whether the identification was reliable, even though the confrontation procedure was suggestive, with due regard given to such factors as the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Syl. pt. 3, *State v. Casdorph,* 159 W.Va. 909, 230 S.E.2d 476 (1976).' Syllabus Point 2, *State v. Gravely,* 171 W.Va. 428, 299 S.E.2d 375 (1982)." Syl., *State v. Williams,* 181 W.Va. 150, 381 S.E.2d 265 (1989).

Syl. Pt. 1, *State v. Franklin*, 191 W. Va. 727, 448 S.E.2d 158 (1994).

The circuit court found that the attempted pre-trial identification of petitioner through the use of a photo lineup was not suggestive nor did it taint any in-court identification. However, in this matter, there is no evidence to suggest, and petitioner does not allege, that the photo array was unduly suggestive, or administered in an unduly suggestive manner. Rather, the more pressing concern is whether the victim's in-court identification of petitioner was sufficiently reliable, in light of the fact that the victim was unable to identify petitioner during the photo array two days after the assault in the photo-lineup, but positively identified petitioner as his assailant at both the preliminary hearing and the deposition where petitioner was dressed in an orange jumpsuit uniform from the jail.

With regard to the in-court identification of a defendant,

> [t]his Court has recognized that even where an eyewitness to a crime improperly views a defendant or a photo array of a defendant after the commission of a crime, but before trial, the viewing does not automatically require suppression of an in-court identification of the defendant by the eyewitness. The real question is whether the witness had a sufficient basis for identifying the defendant apart from the improper view.

*State v. Taylor*, 200 W.Va. 661, 665, 490 S.E.2d 748, 752 (1997).

Our review of the record reveals that at trial, the victim testified that he was assaulted by two white men, one shorter than the other, approximately twenty-four or twenty-five years old. The victim also testified that although he had never seen petitioner before the incident, he was

3

familiar with petitioner's co-defendant and had observed the co-defendant in his store on a few occasions. The victim testified to a struggle, in which he attempted to fight off his assailants, until he was knocked to the ground and lost consciousness. The victim stated that when the men walked into his home, he had his glasses on, but that the glasses were knocked off of his head during the altercation. The victim testified further that at the time of the photograph lineup that he did not have his glasses, because they were broken in the altercation. In addition, the victim confidently identified petitioner at trial.

Prosecutor: Is there something about that person that, besides just being taller and white, something about his features that you remember?

Mr. Snyder: Mostly his eyes. They are like a little bit strange.

Prosecutor: Okay. And do you see that taller person here in the courtroom today?

Mr. Snyder: Yes, I see him.

Prosecutor: Would you please point to him?

Mr. Snyder: He's sitting right there. [Indicating petitioner.]

The circuit court instructed the jury that "one of the issues in this case is the identification of the defendant as the person who committed the crime(s) charged," and outlined the elements of the aforementioned "totality of the circumstances" test for the jurors. In addition, petitioner's trial counsel was given the opportunity to cross-examine petitioner on this issue. Based upon this evidence, and the specific facts of this case, we find the in-court identification of petitioner by the victim to be sufficiently reliable, and decline to reverse on this ground.

Petitioner also alleges that the circuit court erred because it did not overturn the jury's verdict, or enter a directed verdict in petitioner's favor. In support, petitioner attacks the testimony of other witnesses, in particular, the testimony of Evan Shirley, his co-defendant.[3] Shirley gave three statements to the police, and testified at petitioner's trial. Petitioner argues that Shirley's testimony contradicts that of the victim, and other witnesses and that this conflicting testimony necessitates a not guilty verdict. In response, the State of West Virginia argues that there is an "abundance of evidence" to convict petitioner. We agree.

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

---

[3] Shirley entered a plea agreement which required that he testify against petitioner on behalf of the State of West Virginia.

Syl. Pt. 1, *State v. Guthrie*, 194 W.Va. 657, 663, 461 S.E.2d 163, 169 (1995).

In addition to the testimony of the victim, the jurors heard evidence from several witnesses including Michael Stillwell. According to the State, Stillwell told police that he saw petitioner earlier that day at the Heritage Inn with a grocery bag containing laptops and coins. He stated there was another man who was thinner with petitioner, but that he did not know him.[4] Earl Faircloth, the victim's son-in-law, testified at trial that petitioner came into his store the day before the robbery for about fifteen minutes, and he identified petitioner at trial. He testified further that as petitioner left the store petitioner told him that he would be back for coins.

Rondi Horwath testified at trial and identified petitioner. She testified that petitioner told her that he intended to rob and steal purses soon; and that petitioner also told her that he was going to rob an elderly couple soon. She acknowledged that petitioner was friends with Evan Shirley, petitioner's co-defendant. She testified that she told petitioner she would not be involved in anything like a robbery, and left him at a Wal-Mart before the robbery occurred.

At trial, Shirley testified that he and petitioner were sick from heroin withdrawal, and got money from petitioner's mother. The two got "high", and proceeded to the victim's house with masks and gloves. Shirley testified that petitioner had a rake in his hands, broke down the door and immediately attacked the victim. Petitioner next told the victim to lie down on the ground, and the victim complied. After that, Shirley testified that petitioner grabbed coins and other items from the back, and that Shirley grabbed laptop computers. He testified further that petitioner tied up the victim, and that they left. After the robbery, Shirley testified that he and petitioner purchased more heroin with some of the coins, and the next day petitioner sold some of the coins at Bechdel's Jewelry.[5] Finally, David Ettinger of Bechdel's Jewelry testified that petitioner sold coins to him on November 29, 2011, for $83.00.

Viewed in the light most favorable to the prosecution, we find there is sufficient evidence upon which the jury relied to determine petitioner's guilt. Accordingly, we find that petitioner's argument lacks merit, and decline to reverse on this ground.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 3, 2016

---

[4] According to petitioner, Stillwell later recanted this story. Stillwell's trial testimony is not included in the record before this Court.

[5] Shirley testified further that he was testifying against petitioner in exchange for a lenient sentence.

5

**CONCURRED IN BY:**

Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

**DISSENTING:**

Chief Justice Menis E. Ketchum


Chief Justice Ketchum, dissenting in writing,

I would set for Rule 19 argument rather than affirm because it does not appear that the victim's identification of the petitioner in this case was sufficiently reliable. The victim, who was seventy-seven years old at the time of the assault, was unable to identify the petitioner in the original photo lineup conducted two days after the assault, and was only able to positively identify petitioner when petitioner was dressed in orange, and seated with counsel at the preliminary hearing and deposition. The circumstances surrounding the assault indicate that the victim was asleep when the assailants entered his shop, and was struck on the head immediately losing his glasses quickly after the assailants entered, and then fought his assailants until he lost consciousness. Evidence also demonstrates that the victim was extremely disoriented after the assault due to the severity of his head injuries. The victim also testified that he did not know petitioner and had not seen him before. Under these circumstances I am not comfortable that the victim would have been able to identify petitioner independently had petitioner not been dressed in orange and sitting with defense counsel at the time of identification.

Further, the State's lack of response to petitioner's allegations regarding the improper identification indicates that the State agrees that the in-court identification of petitioner by the victim was improper. Pursuant to Rule 10(d) of the West Virginia Rules of Appellate Procedure, "[i]f the respondent's brief fails to respond to an assignment of error, the Court will assume that the respondent agrees with the petitioner's view of the issue."

Therefore, I dissent.